Good morning, Justices. Reynold Finnegan on behalf of Kareem Kachatryan, the petitioner in this matter. This case is an asylum case and I think the issue is credibility. The board basically had four points on supporting their adverse credibility finding. In my opinion, only one of them really has any teeth to the support argument, which is the discrepancy in the dates during respondents' testimony between October 1999 and January 2000. You think that's the one with teeth? That was my opinion. The one at the heart of the claim? Yeah, that one kind of was related to when she was injured and I think that one. Why don't you address the corroboration of her daughter's kidnapping? Okay, sure. The one on the corroboration of the daughter's kidnapping. In this matter, a respondent was already in the United States. She was informed that her daughter was kidnapped by the political party she was having problems with by a petitioner's husband. She was already in the United States. She wasn't there to witness it. She was hearing about it secondhand and there was some vagueness in petitioner's testimony as to what exactly transpired. Now, during the testimony, the judge never really got into why she was vague on this point. It could have been that her husband was trying to protect her and not giving her the full story on the kidnapping. My point on this is what document did the judge or the board want petitioner to produce? There's no specific reference to which document the board wanted in this case. There's no evidence that the police were involved, so I don't think a police document was available. The kidnappers aren't going to write a letter, so that's not available. A letter from the relatives usually doesn't carry a lot of weight in immigration court. In a recent case, I cited in my 28-J citation, Zao v. Gonzalez states it's inappropriate to base an adverse credibility finding on a failure to produce an affidavit from relatives who are outside the U.S. Therefore, I don't think that there's any document that would be available to satisfy the board on this issue of respondent's daughter's kidnapping. And another argument, side argument to the same issue, even if, there's one other point I'd like to make here. Saying that the evidence does not support an asylum or a past persecution finding is one thing. To say it supports an adverse credibility finding is quite another. And not producing a document does not mean respondent testified not credibly. So I don't think that this issue should support an adverse credibility finding. Maybe she didn't reach the level that she needed to to support a past persecution or well-founded fear of future persecution on this issue. But to use it to support an adverse credibility finding I think is not correct. Assuming that we were to agree with your argument on the adverse credibility, I presume that this case would have to be remanded for further proceedings. Yes, Your Honor, I believe so. The point I would make on that, though, is I would, petitioner would prefer if the court did make a finding of past persecution or a strong recommendation that there is past persecution based on the beating she suffered at the hands of the party members and the subsequent beating she suffered at the police station when she went to find out why the investigation was taking so long. And in that respect, I think that the court could recommend that past persecution looks like it's shown and then it would be remanded on the issue for the judge to exercise the discretion or the board and also to give the government an opportunity to rebut the presumption of future persecution. Counsel, assuming I agree with you that the date discrepancy has teeth, what's your response regarding the adverse credibility determination on that issue? Yes, Your Honor, and on this one I think that the petitioner was confused as to the dates. It was not an instance where she was creating something to enhance her asylum case. I believe there's two Ninth Circuit cases that are directly on point. The Valerio Lopez case, which is from page 13 of petitioner's opening brief, states that a date discrepancy by itself is not enough to support an adverse credibility finding. But if this is the seminal event that leads to her persecution in her testimony, it's your position that it's too much to expect for her to be accurate on that date? When Respondent was confronted with the medical document which showed that the incident occurred January 2000, I believe she did rectify her testimony and say, okay, then it must have happened in January of 2000. The judge made a big deal about it because she asked her several times before she was confronted about that and she seemed kind of sure it was October 99, but once she was confronted with the January 2008 her testimony was, I must be confused. I'm sorry. But that doesn't change that the event didn't happen. It's just that Respondent was confused as to the dates. There's also a case called Shaw, which is from page 18 of Respondent's answering brief, which says that if the discrepancy is not enhancing the asylum claim, then it's not useful for adverse credibility. It's the sole basis for the asylum claim, though. It's really difficult when you're talking about events that occurred thousands of miles away. The only evidence we have is the testimony of the petitioner. And so if it's the single event that gives rise to the persecution claim, then I think it's different than when you have a discrepancy about who was born when or something to that effect. That would be materiality, whether it's material to the asylum claim. I think the discrepancy is material to the asylum claim in this case, but it's not enough to support an adverse credibility finding if you review the Shaw case, which states that she was not enhancing her adverse credibility. She did correct her testimony and say it must have been January 2000. Well, Counsel, we have upheld adverse credibility determinations where the discrepancy about the date of the key event was at issue. Would you agree with that? I would agree with that, yes, Your Honor, that that has been a holding in the past. In this case, I don't think it rises to that. If you look at Shaw, usually there has to be something more, like she was evasive about answering the question about the dates or something along those lines. And in this case, we don't have that something more. The other two instances, the accounting versus the bookkeeper, is the question of semantics. Bookkeepers often call themselves accountants. I don't think that's a discrepancy that really counts in this case. The fact that Petitioner didn't list her 98 employment on the I-589 application for asylum is not really material. She specifically testified that it was a volunteer, non-paying position. That's located on page 7 of the Respondent's Answer in Brief and page 70 of the record, that she was doing it as a volunteer basis. So you can understand why it was not included in the I-589. So I don't think that was a valid grounds to support the address credibility. I see I have two minutes left I'd like to reserve. Thank you, Judge. You'll hear from the government. Proceed, ma'am, if you're ready. May it please the Court, my name is Jennifer Lightbody and I represent the Respondent, the Attorney General. The Petitioner has pointed to no evidence in the record compelling the conclusion that she's credible. The Petitioner filed an affirmative asylum application and appeared before an asylum officer and gave her story. And the asylum officer didn't believe her. She had, if you will, a dress rehearsal, an opportunity to present her case, and she still couldn't get it right. She had inconsistencies which were the basis of the immigration judge's adverse credibility finding, and those are supported by substantial evidence. Now, so let me ask you the one about the dates. That seemed to be, to my reading of the immigration judge's decision, the centerpiece of the concern, the October 99 versus January of 2000. The IJ seems to suggest that the applicant persisted in claiming an October 99 date, even when confronted with adverse information. I just don't read the record that way. The medical documents say January 2000. The original asylum application said January 2000. And when she was confronted with the discrepancy of the hearing, she just said, you know, I'm confused. I can't remember everything. So she did misstate the date. There's no question about it. I guess I'm having some difficulty understanding why that is so central that it can ditch her whole application. Okay. First of all, she testified that the date was October of 1999, and that's found in the administrative record at page 75, page 81 and 94. So she had said it several times. We know where she said it was 2000, which was the asylum application, the medical record, and what she testified. We know all that. So just to answer Judge Graber's question, because I'm interested in that, too. Why is that enough of a... In other words, the asylum application starts out by saying January of 2000, and the medical records corroborate that. They're all consistent. And she testifies it's October 99, and when that is called to her attention, she says, I'm sorry, I was confused. It's still January 2000. So why is that sequence of events fatal to her claim? Well, first of all, I disagree with what Petitioner's Counsel said. She didn't correct herself and say, oh, I must have been wrong, it was January 2000. No, I'm confused. I can't remember everything. Right. I can't remember everything. Well, to answer the question, this is the heart of her claim. Everything that happened subsequently to this was based on what transpired during this particular rally. And she testified that it occurred in 1999, but yet it completely contradicted the evidence that she submitted. And this wasn't the first time that she was telling her story. As I had mentioned before, she told this to an asylum officer who didn't believe her. She still couldn't get her story straight. Her story was absolutely straight as to the central aspect, which was what happened at the rally. And that, not when it occurred, is the seminal point of her request for asylum. It is the past persecution of the other counsel. Why is it so critical, when she ended up returning to what she had originally said, that she got confused in the middle of the hearing and set another date? Well, the date when she said it happened was critical because she submitted documentary evidence. Let me come at it a different way. When she said it occurred on October 1999, did that serve to enhance or embellish her claim in any way? No, but I don't think that that's the... That's one of the considerations. If you're looking at whether someone is lying about something, usually it's going to be to enhance or embellish their claim. But not always. I respectfully disagree. All of it together, not only what exactly happened to her, whether she was beaten unconsciously, all of that, the timing of it, what exactly happened to her, all is critical. Why is the date critical? The date is critical because she submitted documentary evidence which contradicted what she said. So it became critical. Maybe, and I'm not suggesting that this would actually be the case, but maybe if she hadn't submitted the cooperating evidence, then she might have been in a different situation, but it contradicted it. Or if her first statement had been, I'm confused, I can't remember everything, I'm not sure when the date was, but here's what happened, would her claim have been not believable? Well, and the reason I'm asking it that way is I have the same difficulty as Judge Wardlaw seeing that the date makes any difference, and these dates are really a couple of months apart, and they're a couple of years before the hearing, and to be a little unsure of a date just seems... But she was adamant about it being in October of 1999, and these are significant injuries that occurred to her, she was beaten unconscious, and she says it occurred in October of 1999, and she kept insisting that that was the case, and not until she was actually confronted with conflicting evidence that she submitted to support her claim did she finally say, I was confused. And counsel says, well, the plausible, in its brief, the plausible explanation for that is that she attended many rallies and she couldn't keep it straight. Well, I would submit to the court that a plausible reason is because she was lying to the immigration judge, but that's not the test here. The test here is whether the record evidence... He did not, but he said she's either submitted a fraudulent document or she's testifying falsely. My reading of it was more that I can't really tell, with respect to the voluntary departure, I guess it was what I was sort of focusing on, and he said, I don't know if she submitted a fraudulent document or she's testifying falsely, but I'm denying voluntary departure. But what he did find was that her testimony was inconsistent with the actual evidence that she submitted, and that was the basis of the adverse credibility finding. And it was significant because her testimony was different from what she had submitted and what she had stated previously in her written application and in her documentary evidence. So she essentially made the date an issue. And in addition to that, the immigration judge found that she was inconsistent about her testimony with respect to her position as an accountant with this organization. And when he confronted her with it didn't seem plausible that someone without a formal education would just be handed the books in this particular case for this organization, then the immigration judge didn't rely on any speculation or conjecture. What he said is that her testimony actually changed. She then said, well, I was just entering what they told me to enter. And she had previously said she found some inconsistencies in the bookkeeping, and then she said, well, that her relatives told her about some inconsistencies. So her testimony changes, and that is sufficient to support the adverse credibility finding, but the petitioner hasn't shown that the record evidence compels a contrary conclusion, which is his burden before this court. What he says is it doesn't go to the heart of his claim. Well, if the incident arising in either where she was beaten unconsciously doesn't go to the heart of her asylum claim, I'm not sure what goes to the heart of her asylum claim. That incident is the main incident from which everything else flows, and she couldn't get the date right. And regardless of what counsel says or argues, he still has to point to record evidence that compels a contrary conclusion, and he hasn't done that. And she didn't correct the record and say, oh, it did occur in January of 2000. She just said, I'm confused, I can't remember everything. But again, this wasn't the first time that she appeared before either an asylum officer or an immigration judge to give her story, and she couldn't get it straight. With respect to the corroborating evidence, petitioner's counsel says, well, there wasn't a police report, there wasn't a ransom note. These are arguments of counsel, they're speculation. There is a decision that corroboration should have been offered or that its absence was a problem. So what corroboration are we talking about? What is it that the agency expected her to produce? Well, I think she could have produced a variety of things. She still could have produced an affidavit from her husband, certainly if the child had been kidnapped. And I want to say just for the record that it wasn't really clear if her daughter was actually kidnapped or not. When I read the record, there was some statement from her husband, but it wasn't particularly clear, which illustrates the reason why we need corroborating evidence, because we don't know what happened. Was the daughter actually kidnapped? I don't know, it's not clear from the record. But to answer your question, a sworn statement from the husband or the daughter saying she was kidnapped. A ransom note, a police report, maybe a hospital record, I don't know. But she didn't come forth and say, you know, I don't have anything. Here's the reason why I can't produce this corroborating evidence. And the immigration judge could certainly rely on the fact that or draw a negative inference from the fact that she did not submit corroborating evidence. And I see that I'm over my time. Are there any other questions? Was this done through an interpreter, her testimony given through an interpreter? I believe it was, but I'm not certain. Yes, it was. It was a Berlitz interpreter in the Armenian language, I believe. Okay. I guess the only other question I have for you is, what was the purpose of submitting the Real ID Act to us? With respect to the corroborating evidence. Does it even apply to this case? The Real ID Act? Yes, it does. Why does it? I thought it didn't apply to cases that had their hearing before its effective date because there'd be no way for anybody to comply with it. That is, no, it's actually in subsection, I believe I pointed it out in my 28-J letter, that subsection E, which is the co-operative 101E, that is, applies to cases now being held before this Court under 101H3. I think that there's an unpublished decision in the Ninth Circuit that relies on 101H2 with respect to co-operating evidence, but it's subsection 3 that specifically relates to the requirement about co-operating evidence. Do you have additional questions? No, that's it. I was just trying to look at this 28-J letter. So you say which section of the Real ID Act? 101E is the section with respect to co-operating evidence that, unless a reasonable fact finder could find it, and the date upon which that is applicable is found under 101H3, not H2, which I think, as I said, there's an unpublished decision, I believe, in this Court relying on H2, which I believe is a misstatement. So we're supposed to put ourselves in the role of a fact finder and say whether or not such evidence is unavailable? Whether the record evidence compels a conclusion that the evidence was unavailable. So we're supposed to make that determination on review. It's not a determination for the BIA. No, correct, on review, whether the record evidence compels a conclusion that that was unavailable. And that goes to the second argument that I was making, that he hasn't shown that there were, that it was, that there were. Thank you. Yes, thank you, Judge. Several points on the no co-operating documents for the daughter's kidnapping. I don't believe there was ever anywhere in the record where a petitioner was afforded an opportunity to respond to the question why she didn't have co-operating documents. Even taking this incident out of the case, Respondent still has a viable claim for political asylum based upon the beatings she herself suffered, based upon her political opinion. So I believe that this issue, also as far as the Real ID Act goes on this issue, I believe there's a due process concern that Respondent is now, has the law applied retroactively in time, that's a legal standard that she was not aware of at the time she presented her case. And I believe that would be a due process problem as well. As far as the, I believe the evidence does compel that this court overturn the credibility finding because there's no evidence in the record to support the credibility finding, except for perhaps the date discrepancy, which petitioner is not arguing that it's not material, it is material to her case. What petitioner is arguing is that, by itself, this one confusion as to the date is not enough to support an adverse credibility finding, specifically the Loreo Lopez case and the Shaw case would support that argument. Any questions? I don't believe so. Thank you.
judges: Graber, Wardlaw, Rawlinson